IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA A. ANDINO,<br><br>            Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF THE<br>SOCIAL SECURITY<br>ADMINISTRATION<br><br>            Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 12-2945 (JBS)<br><br><br>**OPINION** |

APPEARANCES:

Richard Lowell Frankel, Esq.
BROSS & GROUP, PA
102 Browning Lane, Bldg. C-1
Cherry Hill, NJ 08003
    Attorney for Plaintiff

Paul J. Fishman
UNITED STATES ATTORNEY
    By: Michelle L. Christ
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Suite 3904
New York, NY 10278
    Attorney for Defendant

**SIMANDLE**, Chief Judge:

**I.   INTRODUCTION**

    This matter comes before the Court pursuant to 42 U.S.C. §

405(g) for review of the final decision of the Commissioner of

the Social Security Administration denying Plaintiff Linda A.

Andino's application for disability insurance benefits under Title II of the Social Security Act (the "Act").

Plaintiff alleges that the Administrative Law Judge ("ALJ") erred in determining that the work she performed under "special conditions" constituted "substantial gainful employment." The Court finds that the ALJ's decision should not be given deference, as the ALJ failed to support his findings with substantial evidence. The Court agrees with Plaintiff that the ALJ's analysis is incomplete because he did not evaluate whether Plaintiff performed work under special conditions. Further, the ALJ assumed facts which were not in the record, namely whether Plaintiff was provided with unique accommodations in her place of employment and whether Plaintiff received such accommodations at her other place of employment. Lastly, the ALJ failed to account for the fact that Plaintiff left work early on some days yet still received pay, thereby potentially contributing to an inflated income level. For the reasons discussed below, the Court will vacate the ALJ's decision and remand for further consideration by the ALJ.

## II. BACKGROUND

### A. Procedural background

Plaintiff Linda Andino of Willingboro, N.J., was 44 years old on February 28, 2007, when she filed her application for disability insurance benefits, alleging disability due to major

depressive disorder, posttraumatic stress disorder, obsessive compulsive disorder, vitiligo, hypertension, knee pain, lumbar pain, overactive bladder, uterine fibroids, and ovarian cysts. (R. at 158). Her claim was denied initially and again upon reconsideration. (R. at 63-72.) Plaintiff subsequently requested a hearing on May 7, 2008. ALJ Brian H. Ferrie held the initial hearing on January 28, 2010 at which time he informed Plaintiff that she could retain counsel; he subsequently adjourned the hearing to a later date. (R. at 57-60.) On April 27, 2010, ALJ Ferrie held a second hearing for Plaintiff, at which time Plaintiff was represented by counsel and testified. Ultimately, the ALJ denied Plaintiff's application on May 13, 2010. (R. at 14-25.) Approximately two years later, the Appeals Council rejected Plaintiff's request for review on March 13, 2012. (R. at 1-5.) Plaintiff then filed this action, and the parties completed briefing on February 19, 2013.

**B. Medical history**

The Court will recount only as much of Plaintiff's medical history as is relevant to this appeal. On April 19, 2010, Plaintiff underwent an independent medical examination (IME) conducted by Ronald J. Karpf, Ph.D. In his report, Dr. Karpf detailed Plaintiff's past and present mental illnesses. In 1995, Plaintiff was hit by a car while riding a bicycle, and her psychological impairments commenced shortly thereafter. (R. at

3

352.) Plaintiff subsequently sought treatment for depression and post-traumatic stress disorder. (Id.) Furthermore, Plaintiff received inpatient psychiatric treatment on two separate occasions, once in October 1997 and then again in 1998. (R. at 353.) Dr. Karpf also noted that prior to her accident in 1995, Plaintiff was hospitalized for five weeks as a result of a mental breakdown in 1988. (Id.) Although she still exhibited elements of depression and posttraumatic stress disorder, Plaintiff ceased seeking treatment in 2009, as she was uninsured and could not afford to pay out-of-pocket. (R. at 242.)

Dr. Karpf reported that Plaintiff perseverated about her accident to the point where it interfered with her regular thought processes. (R. at 355.) Her social judgment was also compromised by her mental impairments, leading Plaintiff to act in an inappropriate manner. (Id.) Specifically, Plaintiff informed Dr. Karpf that she had a "strange habit of eating Ajax cleaner" along with other abnormal eating tendencies which were beyond her control. (Id.) In evaluating Plaintiff's attentiveness and ability to perform various tasks, Dr. Karpf reported, "she cannot perform complex activities within a schedule, only simple activities. She needs frequent rest periods in order to perform at a consistent pace." (R. at 356.)

When asked about her daily living activities, Plaintiff claimed she was capable of cleaning her home but needed help

with shopping, cooking, and budgeting money, all of which her

daughter assisted her with. (Id.) In his report, Dr. Karpf also

indicated that Plaintiff's hygiene was affected by her

depression, especially on days when she was "too depressed to

get out of bed." (Id.) Lastly, Dr. Karpf noted that Plaintiff

had been fired a total of three times for failing to show up to

work. (Id.) Ultimately, Dr. Karpf diagnosed Plaintiff with major

depressive disorder, posttraumatic stress disorder, obsessive

compulsive disorder, and pica, with a GAF score of 42. (Id.)

Within the past year, Plaintiff's highest GAF score was a 44.[1]

Prior to Dr. Karpf's IME, Plaintiff was examined by Dr.

Lewis Alban, Ph.D., on May 14, 2007. (R. 242-47.) Just as Dr.

Karpf's evaluation revealed, Dr. Alban also noted Plaintiff's

compulsive behaviors as well as her "fair to poor attention span

and difficulties concentrating." (R. at 245-46.) Ultimately, Dr.

Alban diagnosed Plaintiff with major depressive disorder,

obsessive compulsive disorder, posttraumatic stress disorder,

and a GAF score of 50. (R. at 246.) Dr. Alban noted that

Plaintiff was prescribed a variety of medications to help treat

---

[1] The Global Assessment of Functioning (GAF) is a numeric scale used to measure the psychological, social, and occupational functioning of adults. A GAF score between 41 and 50 indicates "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

her mental deficiencies. (R. at 243.) Plaintiff's treating physician, Dr. Horatio G. Daub, M.D., affirmed the observations made by both Dr. Karpf and Dr. Alban regarding Plaintiff's psychological diagnoses. (R. at 284.)

In addition to her mental impairments, Plaintiff has a history of vitiligo, hypertension, knee and lumbar pain, overactive bladder, uterine fibroids, and ovarian cysts. (R. at 284, 356-67.) Plaintiff was diagnosed at the age of 26 with vitiligo, a condition that creates patches on her face, and reported feeling self-conscious and embarrassed by it. (R. at 353.) Indeed, she testified during her hearing that she has "problems sometimes being around people. I'm very self-conscious about my Vitiligo." (R. at 42-43.) Furthermore, Plaintiff sought treatment on numerous occasions for uterine fibroids and ovarian cysts. (R. at 270-83, 293-304, 313-16, 323-49.) Lastly, according to a consultative examination conducted by Dr. Kenneth Klausman, M.D. on May 24, 2007, Plaintiff has experienced difficulty walking and performing basic tasks due to a limited range of motion in her back and knees as a result of chronic lumbar and knee pain. (R. at 268.) In corroboration with Dr. Klausman's report, Dr. Daub, Plaintiff's treating physician, specifically noted that Plaintiff was limited to standing or walking for as much as two hours each day and sitting for less than six hours per day. (R. at 285.)

## C. Administrative hearing and ALJ's decision

ALJ Ferrie held a hearing during which Plaintiff and her supervisor, Darlene Dalton, testified as to Plaintiff's limited activities and responsibilities in her part-time position at Crossroads Transitional Living Program. Plaintiff stated that over the past three years, she typically worked only two days per week; however, there were also weeks where she did not go to work at all due to her anxiety and depression. (R. at 41-42.) On days where she is unable to go to work, Plaintiff testified that she will typically call and ask Ms. Dalton if she would like her to come in on one of her "good days" instead. (R. at 46.) Plaintiff also testified that she worked at another program, "Rights of Passage," where the foster children enrolled in that program were aged eighteen to twenty-one, unlike the children at Crossroads, who were aged fifteen to nineteen. (R. at 44.) Plaintiff stated that her co-workers at Crossroads cover for her regularly, particularly in situations where she is around others, namely children or "stronger" staff members, and thereby prone to anxiety and breakdowns. (R. at 39, 51-52.) Ms. Dalton indicated that Plaintiff leaves work early on a regular basis. (R. at 39.) Plaintiff stated that on days when she does indeed leave early, she still gets paid for the remaining hours that she was scheduled to be there. (R. at 47.)

Regarding her responsibilities in the workplace, Ms. Dalton testified that Plaintiff works on a part-time basis and receives accommodations as a member of the youth counseling staff. (R. at 28-40.) Ms. Dalton acts as Plaintiff's "home-base" manager in the program because, according to Ms. Dalton, Plaintiff did not get along well with other supervisors. (R. at 35.) Ms. Dalton recognized Plaintiff's needs and was able to "accommodate her because when she works she's good." (Id.) Further, Ms. Dalton testified that Plaintiff is only called in for work as a "last resort." (Id.) Specifically, she noted that "[i]f there's three men I can bring her [Plaintiff] in as a third-party because she's not carrying the brunt of the work." (Id.) Moreover, Ms. Dalton indicated that she typically uses Plaintiff "for backup, you know, taking, going, or running errands or things like that" and "wouldn't hire her as a full-time employee because she couldn't do it." (R. at 36.) When asked by the ALJ if she made accommodations for Plaintiff, Ms. Dalton responded, "We [Ms. Dalton and other staff members] have all kind of come to the conclusion that she just can't do it by herself." (R. at 37.) In concluding her testimony, Ms. Dalton noted that Plaintiff's mental health issues become apparent for those who work with her over a period of time. (R. at 39.)

In addition to her testimony, Ms. Dalton also submitted a letter which is a part of the record. (R. at 234.) Included in

the letter is a description of Plaintiff's position as a substitute youth counselor at Crossroads. In addition, Ms. Dalton indicates that Plaintiff does not have a set schedule or number of hours and works "in accordance to her health." (Id.) In her letter, Ms. Dalton also includes that she has granted Plaintiff permission to leave work early if Plaintiff requires medical attention or is unable to work due to her health problems. (Id.) Lastly, Ms. Dalton's letter explicitly states that Plaintiff is provided "an abundance of flexibility which accommodates her health limitations," one such accommodation being the fact that she only works when assisted by other staff members. (Id.) She also includes that when Plaintiff is feeling well enough to commit to the job, she is able to complete assignments and helps with proof reading and filing. (Id.)

In his written decision, ALJ Ferrie ultimately determined that Plaintiff was not disabled. (R. at 17.) He began the required five-step analysis[2] by finding that Plaintiff had indeed engaged in substantial gainful activity (SGA) since the alleged disability onset date of February 20, 2007. (R. at 19; See 20 C.F.R. § 404.1572 (defining substantial gainful activity as paid work which requires significant physical and/or mental capabilities).) The ALJ stated that "if an individual has earnings from employment or self-employment above a specific

---

[2] See 20 C.F.R. § 404.1520(b) (describing the analysis).

level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575)." (R. at 18.) In making his assessment, ALJ Ferrie noted that the monthly compensation Plaintiff received for the years 2007, 2008, and 2009, or $992.16, $1,011.97, and $1,304.83, respectively, all exceeded the maximum amount of income which can be earned without qualifying as SGA under 20 C.F.R. § 404.1520(a)(4)(i). (R. at 19.)

In response to Plaintiff's claim that her work should not be considered substantial gainful employment under Social Security Regulation 05-02,[3] ALJ Ferrie held that the regulation did not apply, as Plaintiff neither ceased working nor reduced her work below the required level of SGA at any time due to her impairments. (Id.)

Further, ALJ Ferrie rejected Plaintiff's argument that her position granted her special accommodations, and consequently her earnings should not be considered SGA under 20 CFR 404.1573. (R. at 20.) In evaluating this argument, the ALJ focused primarily on Plaintiff's income and the fact that "she worked about 20 to 25 hours per week and averaged about $1000 per [month] during the period for which she is claiming disability."

---

[3] See SSR 05-02 ("We generally consider work that you are forced to stop or to reduce below the substantial gainful activity level after a short time because of your impairment to be an unsuccessful work attempt.").

(Id.) In addition, ALJ Ferrie referred to Ms. Dalton's testimony in finding that Plaintiff did not receive special accommodations in being able to decline work opportunities when called upon, as her position as a member of the counseling staff provided her, as well as other employees, with the option to work on an intermittent basis. (Id.)

The ALJ did indeed recognize that Plaintiff receives "special consideration" in that Ms. Dalton only places Plaintiff in non-stressful situations where she is working with others. (Id.) However, he pointed out that Plaintiff, who has worked with supervisors other than Ms. Dalton, "may not be given the same special conditions when she is working under the supervision of others." (Id.) Accordingly, ALJ Ferrie concluded, "[t]here has been no continuous 12-month period during which the claimant has not engaged in substantial gainful activity." (Id.) Further, the ALJ determined, "[t]he claimant has not been under a disability, as defined in the Social Security Act, from February 20, 2007, through the date of this decision (20 CFR 404.1520(b))." (Id.) Therefore, the ALJ denied Plaintiff's claim for benefits.

## III. DISCUSSION

### A. Standard of Review

Federal statute empowers the Court to review the Commissioner's decision to deny disability benefits. 42 U.S.C. §

405(g). The Court's review is deferential to the Commissioner's decision, and the Commissioner's factual findings are conclusive where they are supported by "substantial evidence." Id.; see also Cunningham v. Comm'r of Soc. Sec., No. 11-2633, 2012 WL 6200379, at *2 (3d Cir. Dec. 13, 2012) (summarizing the deferential standard of review). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 400 (1971); see also Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (using the same language as Richardson). The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. Buffington v. Comm'r of the Soc. Sec. Admin., 187 Soc. Sec. R. Serv. 383, 2013 WL 796311, at *3 (D.N.J. Mar. 4, 2013).

The Commissioner utilizes a five-step sequential analysis to evaluate disability claims. 20 C.F.R. § 404.1520. If one of the steps is not met, the evaluation ends and the individual's disability claim is denied. The steps are as follows:

> 1.) If the claimant engages in substantial gainful activity, the claim for disability benefits will be denied. 20 C.F.R. § 404.1520(b).

> 2.) If the claimant does not have a severe impairment which limits his or her physical or mental ability to perform standard work activities, the claim will be denied. 20 C.F.R. § 404.1520(c).

3.) If the claimant's severe impairment(s) does not meet or equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claim will be denied. 20 C.F.R. § 404.1520(d).

4.) If the claimant's severe impairment(s) does not meet or equal the severity of any listed impairment, and the claimant retains a residual functional capacity (RFC) to meet the physical and mental demands of his or her past work experience, the claim will be denied. 20 C.F.R. § 404.1520(e).

5.) If the claimant does not retain the RFC to perform past work, then such factors as the claimant's RFC, age, education, and past work experience will be evaluated to determine if there is indeed other work the claimant can do. 20 C.F.R. § 404.1520(f).

**B. Parties' Arguments**

Plaintiff contends that the ALJ's failure to evaluate her disability claim past step one of the five-step sequential analysis warrants remand. (Pl. Br. at 14.) Specifically, she argues that the ALJ erred in concluding that the work she completed under "special circumstances" constituted SGA. (Id.) Although Plaintiff admittedly exceeded the level of income needed to qualify as SGA, she claims she would not have been able to complete such work without the unique accommodations provided to her by her supervisor and co-workers. (Id.)

Plaintiff relies on 20 C.F.R. § 404.1573(c), which provides that "special conditions" can include frequent rest periods, irregular hours, special assistance from other employees, and a lesser efficiency or productivity level when compared to other

employees. (Id.) Plaintiff maintains that the letter and oral testimony provided by her supervisor, Ms. Dalton, indicate that a high degree of flexibility was afforded to Plaintiff in her role as an employee at Crossroads. (R. at 234.) Plaintiff also argues that Ms. Dalton's testimony established that Plaintiff is generally assigned different, less demanding tasks from her co-workers given the nature of her disability and her inability to handle stressful situations. (R. at 35-36.) Finally, Plaintiff contends that had she not been provided with the accommodations previously described, all of which she claims qualify under 20 C.F.R. § 404.1573(c), she would not have been able to surpass the threshold income level of SGA. (R. at 16.)

The Commissioner opposes Plaintiff's arguments by first citing the amount per month Plaintiff earned for the years 2007, 2008, and 2009. The Commissioner maintains that this explicitly demonstrates that Plaintiff's earnings were above the level of SGA for each respective year. In addition, the Commissioner points out that Plaintiff's total earnings indicated she likely averaged about twenty to twenty-five hours per week, which differed from Plaintiff's testimony in which she stated she only worked six to eight hours per week and would go some weeks without working at all. (Def. Br. at 9; R. at 20, 32.) The Commissioner argues that the ALJ did consider the special conditions Plaintiff alleged were provided to her, noting,

however, that work completed under special conditions does not automatically show that an individual lacks the ability to perform SGA. (Def. Br. at 8; R. at 19-20; see 20 C.F.R. 404.1573.)

In deeming Plaintiff had both the skills and ability to complete SGA, the Commissioner argues that the ALJ specifically noted Plaintiff was able to go to work without reducing her overall activity level or ceasing work altogether during the alleged disability timeframe. (Def. Br. at 8.) Furthermore, the ALJ determined that providing Plaintiff with flexible hours was not a unique accommodation made only for Plaintiff, as her co-workers, as per the ALJ's ruling, also had this option. (Id.)

The Commissioner does not dispute that the ALJ did indeed recognize that Ms. Dalton has given Plaintiff less demanding work. However, the Commissioner also points out that the ALJ noted the Plaintiff worked for another program which she did not indicate provided her with comparable accommodations. (Def. Br. at 9; R. at 17.) In addition, the ALJ further attempted to discredit Plaintiff's testimony by pointing out that Plaintiff worked with children at her other job. Lastly, the Commissioner argues the ALJ held that Ms. Dalton's testimony revealed Plaintiff was a good worker and was able to perform various tasks including cooking and running errands. (Def. Br. at 9-10; R. at 20, 35.)

Therefore, the Commissioner urges the Court to uphold the ALJ's decision.

## C. Analysis

The main issue before the Court is whether the record supports the ALJ's conclusion that Plaintiff was capable of performing work at levels of SGA. After reviewing the record, the Court finds that the ALJ erred in denying Plaintiff's claim at Step One of the five-step analysis.

Step One of the analysis requires the ALJ to determine if the claimant has engaged in SGA. 20 C.F.R. § 404.1520(a). In doing so, the ALJ must first look to a claimant's monthly income to see whether it has indeed exceeded the level of SGA.[4] However, the SGA analysis is not purely an income analysis. The ALJ must also take into account whether the work was performed under special conditions. Specifically, 20 C.F.R. § 404.1573(c) provides:

> The work you are doing may be done under special conditions that take into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital. If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity. Also, if you are forced to stop or reduce your work because of the removal of special conditions that were related to your impairment and essential to your work, we may find that your work

---

[4] The Commissioner's regulations provide a mathematical formula for calculating the amount of earnings which constitute substantial gainful activity. See 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2).

does not show that you are able to do substantial gainful activity. However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level. Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which--

> (1) You required and received special assistance from other employees in performing your work;
> (2) You were allowed to work irregular hours or take frequent rest periods;
> (3) You were provided with special equipment or were assigned work especially suited to your impairment;
> (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
> (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or
> (6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

Further, in executing a thorough analysis of an individual's claim, the Commissioner is required to consider all evidence in the record. 42 U.S.C. § 423(d)(5)(B); Plummer v. Apfel, 186 F.3d 422, 433 (3d Cir. 1999). The Act states: "In making any determination with respect to whether an individual is under a disability..., the Commissioner of Social Security shall consider all evidence available in such individual's case record...." § 423(d)(5)(B). At the same time, the ALJ is not required to produce "an exhaustive discussion of all the

17

evidence." <u>Hernandez v. Comm'r of Soc. Sec.</u>, 89 F. App'x 771, 773-74 (3d Cir. 2004). However, "[t]he ALJ's failure to address evidence in direct conflict with his/her findings or to reject uncontradicted evidence without a clear statement of the reasoning is erroneous." <u>Landeta v. Comm'r of Soc. Sec.</u>, 191 F. App'x 105, 110 (3d Cir. 2006); <u>Adorno v. Shalala</u>, 40 F.3d 43, 48 (3d Cir. 1994). <u>See</u> <u>also</u> <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F. 3d 112, 122 (3d Cir. 2000) (remanding case to ALJ for failure to consider witness testimony).

In this case, the ALJ failed to adequately assess the Plaintiff's disability claim past the first step of the five-step disability analysis. The ALJ's decision relies heavily on quantitative data, or the amount per month that Plaintiff earned as well as the number of hours she worked, in deeming that Plaintiff did, and is indeed capable of performing SGA. In making such an assessment, however, the Commissioner should have also evaluated the qualitative factors in Plaintiff's claim, or the detailed testimony by Plaintiff's supervisor evidencing Plaintiff's unique employment accommodations in addition to the medical reports submitted by numerous physicians discussing Plaintiff's mental and physical deficiencies. As such, the ALJ prematurely dismissed his inquiry of Plaintiff's disability claim.

In particular, the ALJ did not comprehensively address both the written statement and testimony of Ms. Dalton, Plaintiff's supervisor, regarding the accommodations provided to Plaintiff in the workplace. As Plaintiff specifically notes, there was no mention of Ms. Dalton's letter anywhere in the ALJ's ruling. This letter, which contained a detailed description of Plaintiff's employment situation, would have likely been of particular use to the ALJ in making his decision, yet he failed to cite it at any point.

Furthermore, the Court also notes that the ALJ assumed Plaintiff and her co-workers were all provided the same accommodations in the workplace, which is not what Ms. Dalton's testimony or anything else in the record revealed. Ms. Dalton did indeed indicate that Plaintiff, just like her co-workers, has a flexible schedule given her part-time nature as a member of the youth counselor pool staff; however, Ms. Dalton did not state that all of Plaintiff's co-workers also had the ability to leave work early and not be penalized, or perform less demanding tasks with the help of others and still get paid the same amount. (R. at 37-39.) It appears that Ms. Dalton's testimony was quite indicative of the special accommodations provided for Plaintiff and should have been carefully assessed prior to denying Plaintiff's claim. The ALJ seems to have overlooked Ms.

Dalton's testimony about the uniqueness of the accommodations that had to be provided to Plaintiff due to her impairments.

An ALJ is free, of course, to reject a witness's testimony as incredible or implausible. In this case, the ALJ's opinion makes no credibility determination as to Ms. Dalton's testimony and does not explain why he rejected her statement. See Burnett, 220 F.3d at 122 (finding that an "ALJ must still explain why he is rejecting the testimony" of non-medical witnesses).

Regarding the ALJ's finding that Plaintiff's testimony did not indicate she received similar accommodations at her other place of employment, the Court notes that Plaintiff was never asked at the hearing to discuss other programs she worked for or her accommodations and work hours at such places. Consequently, the ALJ appears to have assumed she was provided comparable accommodations without eliciting concrete evidence during the hearing as to this matter. See Hess v. Sec. of Health, Educ. and Welfare, 497 F.2d 837, 841 (3d Cir. 1974) (remanding case to ALJ because easily obtainable evidence which could have resolved doubts as to one of plaintiff's claims was not reviewed by ALJ). Whether Plaintiff did indeed receive similar accommodations from her other supervisors is an issue of fact that could have been easily resolved.

Finally, the Court also notes that there is indeed a possibility Plaintiff did not legitimately exceed the

quantitative level of SGA to begin with. Plaintiff stated in her testimony that on various occasions she would be paid for the entirety of her shift even when she had to leave early due to her anxiety or depression. (R. at 47.) This factor may have accounted for the fact that Plaintiff's earnings exceeded the level of SGA even though in reality she might not have been capable of performing work at such a magnitude. This issue of fact is one that should also be taken into consideration by the ALJ on remand. Plaintiff, to be sure, is making a very unusual claim that she was paid for hours when she was unable to work. The ALJ, on remand, may address this facet of Plaintiff's claim and resolve the tension between Plaintiff's testimony and her pay records.

In conclusion, the ALJ failed to evaluate whether Plaintiff performed work under special conditions. The ALJ assumed facts not in the record, specifically whether other employees at Crossroads received the same accommodations as Plaintiff and whether Plaintiff received similar accommodations at her other place of occasional employment. The ALJ also failed to account for Plaintiff leaving her employment early and still receiving pay. Therefore, the Court cannot conclude that the ALJ's

findings are supported by substantial evidence and must remand the matter for further consideration.[5]

## IV. CONCLUSION

The Court will vacate the Commissioner's final decision and remand the matter to allow the ALJ to develop his reasoning and analysis as outlined above. An accompanying order will be entered.

**July 2, 2013**                                    **s/ Jerome B. Simandle**
Date                                                JEROME B. SIMANDLE
                                                    Chief U.S. District Judge

---

[5] If on remand the ALJ determines that Plaintiff has engaged in substantial gainful activity at Step One, the evaluation ends. Plaintiff's argument to the contrary is incorrect under 20 C.F.R. §404.1520, supra.